IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                                )
PETER GLASSMAN,                 )
                                )
          Plaintiff,            )
                                )
v.                              )        Civil Action No. 01:09-cv-1249
                                )
ARLINGTON COUNTY, VIRGINIA,     )
et. al.,                        )
                                )
          Defendants.           )
                                )
```

## MEMORANDUM OPINION

The matter comes before the Court on Defendants' Motions to Dismiss the Verified Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff brings this action against Arlington County, Virginia (Arlington County), 1210 North Highland Street (1210 N. Highland), the Views at Clarendon Corporation, Inc. (The Views), the Virginia Housing Development Authority (VHDA), and the First Baptist Church of Clarendon (FBCC). Plaintiff alleges excessive entanglement with and preferential treatment of the FBCC, in violation of the First Amendment of the United States Constitution and the Virginia State Constitution, with respect to the development of an affordable housing project with the First Baptist Church of Clarendon. Plaintiff added the VHDA as a

Defendant predicated upon the allegation of Arlington County that it had disbursed all of its funding to VHDA as of December 14, 2009.  The remaining Defendants were added based on Plaintiff's allegation of conspiracy with the County to violate Plaintiff's rights under the United States and Virginia Constitutions and based on their unjust enrichment in receipt of constitutionally improper loan proceeds.

FBCC is a religious body that owned and occupied a piece of land, located in Arlington County, at the time Plaintiff filed his original Complaint in November 2009.  The Property was occupied by FBCC's sanctuary and other religious facilities.  The Views is a Virginia not-for-profit corporation established by FBCC to oversee the development and operation of an affordable housing complex proposed for the Property.  1210 N. Highland is a legal entity established by the Views to be the owner of the Property and the borrower on a County loan for the development of affordable housing.

Plaintiff Peter Glassman is a resident, citizen, property owner, and taxpayer of Arlington County.  Plaintiff lives in the neighborhood abutting the Church, less than one block from the Church property.  Plaintiff alleges the real estate taxes levied against Plaintiff and other Arlington County real estate developers and owners constitute a substantial portion of Arlington County's budget.  Plaintiff alleges as much as 80

2

percent of the monies used to fund the Arlington Affordable
Housing Investment Fund (AHIF), which is providing $13.1 million
in loans for the building of the Church, come from the Arlington
County budget.  Therefore, Plaintiff alleges, taxes paid by him,
in part, fund the AHIF program, which is in turn funding the
building of FBCC.  Plaintiff claims he has an immediate,
substantial pecuniary and constitutional interest in AHIF monies,
the loan being made through the County AHIF program, and the
County Board's decision to approve the $13.1 million loan.
Plaintiff also claims he is not of the Baptist faith, and has a
substantial grievance concerning the County and State's financing
of a Baptist Church building less than one block from his home.
Plaintiff claims given the proximity to the Church, he is
personally affected by the building of this new structure.

     Plaintiff alleges FBCC secured funding from Arlington
County, approved by the Board of Supervisors, to fund the
demolition of the current Church and construction of a
replacement building, including a sanctuary and other religious-
based facilities.  Plaintiff states the funds used to develop and
build the Church were raised through property and other taxes
assessed on Plaintiff, and through taxes and other levies placed
on developers and other entities pursuant to authorization by the
Commonwealth of Virginia and its General Assembly.

     Plaintiff alleges Arlington County invoked affordable

3

housing as a stated rationale for a $46 million project that
would yield only 70 affordable housing units out of 116 unit
residential complex in FBCC's building, with no cash contribution
to the effort from the Church.  Plaintiff alleges the affordable
housing rationale was used to mask what is really a subsidy from
Arlington County to support the building of FBCC.  Plaintiff
further alleges that the 70 affordable housing units will have an
unmistakable religious overtone because of the fact the units
will sit on land owned by the Church, the building lobby and
entrance will be within the Church portion of the property, and
will be shared with the Church.  The housing units will be
sandwiched between FBCC's newly-built sanctuary and the FBCC's
renovated educational wing, and the housing units will share with
FBCC a common foundation, common elevator, and other common
infrastructure such as piping and walls.

Plaintiff claims that those residents who receive the
County-subsidized affordable housing will be chosen by a Board
dominated by Church-appointed members, with the active
participation of a representative of the County.  That these
affordable housing residents will pass through FBCC's property,
overlook the Church's steeple, and be subjected daily to the
Church's message.  Plaintiff states the County's actions, at
best, have the perceived and actual effect of advancing religion,
and at worst, the County actually acted with the purpose of

4

establishing and promoting religion.

Plaintiff alleges that through this arrangement, Arlington County has become excessively entangled with the Church. Plaintiff claims the County will use 12 units of the project for the County Department of Human Services Permanent Supportive Housing Program, requiring regular and on-going participation by the County, and continuing expenditures, and that the County has been the FBCC's development partner and supporter throughout the development process.  Plaintiff alleges the County granted unprecedented zoning variances to benefit the Church, that it approved unprecedented levels of County funding to the project in amounts that are not supported by the value of the property being built, and that it appointed a County representative to sit on the Church-dominated Board of The Views, which will oversee the construction of the building that will house the Church.  Through all the conduct above, Plaintiff argues that Arlington County has become impermissibly entangled with the operation of FBCC.

Count I of the Complaint alleges a Violation of the First Amendment of the Establishment Clause of the United States Constitution.  Plaintiff alleges Defendants' approval of the loan has the primary effect of advancing religion, with terms that are extraordinary and preferential to the Church.  Plaintiff alleges it inherently defines the loan recipient, The Views, by reference to its religious nature given the domination of its Board by

Church members, and it fosters an illegal entanglement with religion.  Plaintiff claims the entanglement between church and state is further aggravated by the provision that one or more County representatives become voting members of the Board of Directors of the developer of the Church's new structure, and by the County Board's own view that it has entered a "partnership" with the Church.

In Count II, Plaintiff alleges a violation of Article I, Section 16, of the Virginia State Constitution, by levying taxes and other fees that are used to erect and repair FBCC's house of worship and support the Church's ministry.  Plaintiff alleges Defendants' violated the Virginia State Constitution in approving the loan and coordinating, supporting, and/or helping administer other public funds to benefit the Church's construction project and ongoing operations.

In Count III, Plaintiff alleges Civil Conspiracy under 42 U.S.C. § 1983.  Plaintiff alleges Defendants FBCC, The Views, 1210 N. Highland, and Special Limited Partnership participated in a civil conspiracy to deprive Plaintiff of his First Amendment Rights, and acted in concert with each other and the County to obtain the financing, and the preferential treatment afforded to the Church by the County.

In County IV, Plaintiff alleges Unjust Enrichment, claiming Defendants FBCC, The Views, 1210 N. Highland and Special Limited

6

Partnership were unjustly enriched through their conspiracy with the County, and that each received a benefit from the County's unconstitutional financing of the project.

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). More specifically, Rule 8 "requires pleading enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007)).

The principal issue in the Amended Complaint is Plaintiff's assertion that the County violated his rights under the Establishment Clause. The Plaintiff's Amended Complaint, however, lacks factual allegations to make out an Establishment Clause claim. In Lemon v. Kurtzman, 403 U.S. 602 (1971), the Supreme Court adopted a three-part test to determine whether an Establishment Clause violation exists. Under the Lemon test, a challenged government action complies with the Establishment Clause if: (1) it had a secular purpose; (2) its principal or primary effect did not advance or inhibit religion; and (3) it did not create an excessive entanglement between government and religion. Id. at 612-613.

More recently, the Supreme Court has applied a two-pronged test, and diminishing the relevancy of "entanglement" into the

evaluation of the "effect" of the challenged action.   See
Agostini v. Felton, 521 U.S. 203, 233 (1997).   The Court stated
"the factors we use to assess whether an entanglement is
'excessive' are similar to the factors we use to examine
'effect.'"  Id. at 232.  The Court decided that "it is simplest to
recognize why entanglement is significant and treat it. . . as an
aspect of the inquiry into a statute's effect."  Id. at 233.   The
Supreme Court later confirmed, in Mitchell v. Helms, 530 U.S. 793
(1999), that Agostini "recast Lemon's entanglement inquiry as
simply one criterion relevant to determining a statute's effect."
Id. at 808.  Agostini is also significant because it "set out
revised criteria for determining the effect of a statute."  Id.
Under those "revised criteria," government aid does not have the
effect of advancing religion if "[i]t does not result in
government indoctrination; define its recipients by reference to
religion; or create an excessive entanglement."  Id. (quoting
Agostini, 551 U.S. at 234).

     With regard to the first prong of the modified Lemon test,
the County's actions Glassman challenges with his Establishment
Clause claim have a secular purpose.  The principal County action
Plaintiff seeks to challenge is a $13.1 million loan the County
made for the construction of an apartment building that will
include 70 units of affordable housing and 46 units of market
rate housing.  Plaintiff also alleges, to a lesser degree,

impropriety in regard to zoning actions that amended the
Arlington County Zoning Ordinance and rezoned the Property to
allow the approval of the affordable housing apartment project.

The secular purpose prong is a "fairly low hurdle," Ehlers-
Renzi v. Connelly School of the Holy Child, Inc., 224 F.3d 283,
288 (4th Cir. 2000), "which may be cleared by finding a
'plausible secular purpose' on the face of the regulation."
Mueller v. Allen, 463 U.S. 388, 394-95 (1983).   The actions of
the County Board in this case had a secular purpose of providing
affordable housing to the citizens of Arlington County.   See Va.
Code Ann. §§ 15.2-735, -735.1, -2223, -2283, -2304 (2008).   The
money for the loan in question came from the County's Affordable
Housing Investment Fund.   Plaintiff alleges that the County
"purports" to be funding the housing project; that 1210 N.
Highland is the "nominal owner" of the Property and the "nominal
borrower" of the County's funds; that The Views was created by
FBCC "ostensibly" for the purpose of building and managing the
affordable housing project "separately from FBCC"; and that the
loaning of funds to The Views is, "by extension," for the
erection of FBCC.   Despite an innuendo Plaintiff tries to draw
from such allegations, the facts alleged in the Amended Complaint
show that the purpose of the loan was to assist in the
development of affordable housing in Arlington County.

Plaintiff speculates that "[a]lthough purporting to finance

only the affordable housing portion of the building, the County
and State funds are in fact funding the building of the Church."
However Plaintiff offers no factual allegations to support his
theory. In fact, the County's loan documents provide that the
loan is expressly for the purpose of financing the affordable
housing project and any use of proceeds for another purpose would
violate the terms of the loan. Plaintiff has not alleged any
facts that would enable this Court to conclude otherwise, so the
secular purpose of providing affordable housing in Arlington
County plainly satisfies the first prong of the modified Lemon
test.

Plaintiff also complains about the County Board's amendment
of the Arlington County Zoning Ordinance to allow the approval of
a 10-story building necessary to provide affordable housing on
the Property. By their very nature, those actions were secular
and thus permissible under the Establishment Clause. In
structuring the Lemon test, the Supreme Court itself recognized
that building and zoning regulations were among the "examples of
necessary and permissible contacts" in the context of the
Establishment Clause. 403 U.S. at 614. Therefore, any such
zoning action was secular and permissible under the Establishment
Clause.

Notwithstanding the secular purpose of the County's actions,
Agostini requires further inquiry into whether the action has the

10

impermissible effect of advancing religion, see 521 U.S. at 234,
and whether the Amended Complaint makes out a claim that the
County's actions "result in government indoctrination; define its
recipients by reference to religion; or create an excessive
entanglement." Id.

To satisfy the "government indoctrination" criterion,
Plaintiff must show (1) that the aid provided by the County
constitutes or results in indoctrination, and (2) that the
indoctrination is attributable to the actions of the County. See
Agostini, 521 U.S. at 226. The Amended Complaint fails to allege
facts from which this Court could conclude that the County's aid
results in any indoctrination attributable to the County or even
FBCC. The Amended Complaint does not allege that FBCC itself has
any intention to indoctrinate anyone to the Baptist faith as a
result of the County's loan. The Amended Complaint alleges
sparse facts about the beliefs of FBCC: that it has the "express
and singular purpose 'to be a community that lives by faith, is
known by love, and is daily growing to be more like Christ.'" The
Court cannot glean from this brief recitation of FBCC's beliefs
that it has a goal of indoctrinating residents in the planned
apartment building. There is also no factual allegation that any
such indoctrination was intended by the County or would be a
result of the County's actions. Nor is there any allegation of
indirect indoctrination in the form of some litmus test that

11

apartment applicants will be required to pass.

Plaintiff attempts to infer such an allegation about the future composition of the apartment renters in his assertion that the Board of The Views "will be responsible for, among other things,. . . determining which applicants will be granted access to renting the subsidized affordable housing at the building," however this does not establish any indoctrination.   Plaintiff does nothing more than speculate that The Views might discriminate against applicants who do not share certain religious beliefs.  Plaintiff claims that The Views' Board will determine the persons who are allowed to rent apartments and then alleges, "[i]f Church members favor renters of a particular set of beliefs (or is even perceived to do so) the County's Board's representative will be perceived as supporting such conduct." Plaintiff's claim falls short of what is required to support a claim for a declaration of unconstitutionality and moreover, such discriminatory conduct is prohibited under the Virginia Fair Housing Act, see Va. Code Ann. § 36-96.3 (2005), and in the VHDA regulations.  See 13 Va. Admin. Code § 10-20-50 (1994).  If The Views actually undertook such a course of action, VHDA would have the power to remove and replace all of its corporate directors and direct its operations in order to fix the problem.  See Va. Code Ann. § 36-55.31(8)(2005).  Plaintiff asks the Court to speculate not only that the members of The Views' Board would

12

violate state law, but also that public officials would be
derelict in their duties.  See Carson v. Warlick, 238 F.2d 724,
728 (4th Cir. 1956) (holding that courts must presume officials
will obey they law until they do otherwise); see also Green v.
City of Raleigh, 523 F.3d 293, 306 (4th Cir. 2008).  Such
speculation does not rise to the level of plausibility necessary
to survive a motion to dismiss.

Plaintiff also speculates future discrimination by the
Views and 1210 N. Highland based on the assertion that they are
alter egos of FBCC.  Plaintiff alleges this because FBCC played a
role in creating the two other entities, the current president of
The Views Board (Jerry Morris) is also a trustee of FBCC, and
four of the seven members of the Board are also members of FBCC.
Such facts do not establish an identity between FBCC and either
of the other two entities, nor any indoctrination by The Views.
The Views is a not-for-profit corporation that was established to
develop, maintain, and manage the apartments planned on the
Property, and there is no legal infirmity as to any of the
County's actions based on the composition of the membership of
The Views' Board.

Plaintiff's allegations are similar to Bradfield v. Roberts,
175 U.S. 291 (1899).  In Bradfield, the provision of funding for
a hospital was challenged on "religious establishment" grounds
because it was alleged, among other things, that the hospital was

13

operated and staffed by "members of a monastic order or
sisterhood of the Roman Catholic Church, and is conducted under
the auspices of said church; [and] that title to its property is
vested in the Sisters of Charity." Id. at 297.   The Supreme
Court concluded that allegations of the religious nature of a
hospital were "wholly immaterial," and that those allegations "do
not in the least change the legal character of the hospital, or
make it a religious corporation out of a purely secular one."
Id. at 298.   The Court stated that "the individual beliefs upon
religious matters [cannot] be inquired into," and that even if
"the influence of any particular church may be powerful over the
members of a nonsectarian and secular corporation,. . . [that]
surely is not sufficient to convert such a corporation into a
religious or sectarian body." Id.   In this case, even if
Plaintiff Glassman had successfully alleged that some
indoctrination will occur as a result of the construction of the
affordable housing project, his claim would still have no merit
unless he were to establish that the indoctrination resulted from
the County's actions.   Even if The Views were a sectarian entity,
the Supreme Court has ruled that "we will no longer presume that
public employees will inculcate religion simply because they
happen to be in a sectarian environment." Agostini, 521 U.S. at
234.

       In addition, Plaintiff fails on the second criteria because

14

the mere fact that FBCC members comprise a majority of The Views'
Board does not transform The Views into a religious entity. One
cannot impute to The Views the religious affiliations of its
directors. Nor is it proper to infer that The Views represents
the alter ego of FBCC. See Bradfield, 175 U.S. at 297-98. In
addition, The Views is not even the recipient of the County's
affordable housing loan. 1210 N. Highland, the actual loan
recipient and the owner of the Property, is a step further
removed from FBCC. It is formed by The Views, not FBCC, and
includes a "Special Limited Partner" that is nowhere alleged to
be of a religious nature. The facts alleged in the Amended
Complaint do not support a claim that the County's affordable
housing loan defined its recipient by reference to religion.

Because the composition of The Views' Board is of no legal
significance, the only money received by FBCC is the money it
received for the sale of the Property. Plaintiff alleges that
FBCC was paid $5.6 million when it sold its property so the
affordable housing apartment building could be constructed, along
with a reconstructed church, on that property. Plaintiff alleges
the payment came from 1210 N. Highland using proceeds from either
the County's affordable housing loan or VHDA funds, or some
combination. It is clear that FBCC was paid this money because
it was the property owner, not because it was a religious entity.
Once FBCC was paid for its property, those funds do not

constitute public funds over which the Establishment Clause may apply. While FBCC can apply the sale proceeds to the demolition and reconstruction of its sanctuary and related religious facilities, the funds are not public funds or loan proceeds that it must repay.

Furthermore, Plaintiff does not state a viable claim that FBCC was paid more than fair market value for its property. Plaintiff alleges that Bay Area Economics valued FBCC's land at $1.1 million in 2004, based on the then-current zoning. The same group projected, however, that the Property would be worth $10.5 million if it were rezoned to the C-R district and the church building were replaced with condominiums. The sale of FBCC's property took place in December 2009, which was after the Property was rezoned to allow the construction of a 10-story apartment building, and a legal challenge to that rezoning failed in the Supreme Court of Virginia. These facts do not provide any support for a claim that FBCC was fraudulently paid more than its property was worth. In fact, Plaintiff alleges that the County Board's approval of the zoning amendments for the Property "'manufactured' just enough 'value' to make this project work financially." Plaintiff's own pleadings thus attribute the increase in value not to any improper conduct regarding the fair market of the Property, but rather to the County Board's 2007 zoning actions, which Virginia state courts upheld.

16

Plaintiff asserts legal conclusions that the County Board gave preferential treatment to FBCC, through The Views, when it authorized a loan of $13.1 million and took zoning actions that permitted development of the affordable housing project.   These legal conclusions are not supported by factual allegations from which this Court could possibly conclude that the County's loan was discriminatorily in favor of FBCC.   Plaintiff fails to allege any facts regarding any other similar circumstances in which the County Board denied affordable housing funding to any other group, whether sectarian or secular, similarly situated or not. Plaintiff also fails to allege that the County Board has discriminated against any other party or has favored FBCC over any other party in the zoning arena.   Plaintiff has offered no factual allegation concerning one other proposal that was similarly situated and that the County Board treated less favorably than the one at issue here.   Thus, the Amended Complaint includes neither a legal nor a factual basis for challenging the County Board's zoning actions under the second Agostini criterion.

The final criterion the Court must evaluate under Agostini concerns whether the County's actions create an excessive entanglement.   Plaintiff's allegations, like the two previous criteria, fall short of stating a cause of action.   Mere entanglement does not present an Establishment Clause violation.

17

Because "[i]nteraction between church and state is inevitable," the Supreme Court has "always tolerated some level of involvement between the two."  Agostini, 521 U.S. at 233.  "Entanglement must be 'excessive' before it runs afoul of the Establishment Clause."  Id.  To assess the degree of entanglement, the Supreme Court considers three factors: "the character and purposes of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and religious authority."  Id. at 232 (quoting, Lemon, 403 U.S. at 615).

Plaintiff alleges no facts that the County is actively engaged in developing FBCC's sanctuary or, for that matter, the affordable housing component of the project.  Plaintiff's primary complaint is about the AHIF loan.  In approving the AHIF loan to 1210 N. Highland, not FBCC, the County Board acted to facilitate the affordable housing project which is being developed by The Views.  As previously stated, Plaintiff's claim that The Views' Board is controlled by FBCC members is insufficient to transform The Views or 1210 N. Highland into FBCC.  See Bradfield, 175 U.S. at 298.  Plaintiff also complains, without significant factual basis, about the County's zoning actions, but in rezoning the Property, the County Board acted as the local legislative body responsible for adopting and amending the Arlington County Zoning Ordinance.  Bd. of Supervisors v. Jackson, 221 Va. 328, 333

18

(1980).  The County's challenged actions, whether considered
separately or in combination, simply do not create "excessive
entanglement" with FBCC.

The County's AHIF loan is for the housing project, not for
the construction of a new sanctuary or other religious facilities
of FBCC.  Plaintiff admits that the County loan will fund "the
development of rental apartment units," but attempts to cast
doubt on this by stating the County "purports" to be funding the
apartments, and that funding "will also be used to supplement the
building of FBCC sanctuary and other religious-based facilities."
Similarly, Plaintiff alleges that 1210 N. Highland is the
"nominal" owner of the Property and the "nominal" borrower on the
loan.  Thus, Plaintiff admits that the loan documents in question
state that the County loan is intended to fund the housing
project, a wholly proper, and secular, purpose.  See, e.g., Va.
Code Ann. § 15.2-735 (2008) (authorizing the County Board to
establish AHIF "to assist for-profit and nonprofit housing
developers or organizations to develop or preserve affordable
housing for low and moderate income persons").

Although Plaintiff speculates that the loan proceeds will
also be used for the construction of FBCC facilities, the only
pertinent factual allegation is that 1210 N. Highland paid FBCC
$5.6 million "for the purchase of the Church's property."  There
is no legal prohibition on a church's ability to sell its

19

property for fair market value, and although Plaintiff complains that much of the Property's value was a product of the 2007 rezoning, there is nothing remarkable about that economic effect. In fact, the County Board's 2007 rezoning actions were challenged and upheld in the Supreme Court of Virginia, and the Amended Complaint does not claim that the Property's zoning is inappropriate or unreasonable.  Furthermore, there is nothing improper about using the proceeds of an AHIF loan to acquire land for such a project, see Va. Code § 15.2-735, if even Plaintiff is alleging such impropriety.  Even if they were used to pay for FBCC's property, once paid to FBCC as consideration for the sale, the funds became FBCC's and were not subject to any County control or oversight.  If the funds enabled FBCC to pay for development of its sanctuary or other facilities, that effect would be collateral to the secular purpose of the loan and would not create any entanglement.  The Supreme Court has repeatedly rejected the notion of an Establishment Clause problem when state contributions to secular activities have the effect of freeing a church to reallocate its money away from secular services to religious activities.  Committee for Pub. Ed. & Religious Liberty v. Regan, 444 U.S. 646, 658 n.6 (1980) (quoting Roemer v. Bd. of Pub. Works, 426 U.S. 736, 747 (1976); New York v. Cathedral Acad., 434 U.S. 125, 134 (1977)).

Plaintiff offers no other factual basis for his assertion that any County loan proceeds will be used to construct FBCC facilities.  The speculative possibility that The Views and/or 1210 N. Highland might improperly request a payment for church-related expenses or VHDA might erroneously disburse AHIF loan funds to pay for items unrelated to the affordable housing project, in violation of state law, is no basis for an Establishment Clause claim in this case.  See Columbia Union Coll. v. Oliver, 254 F.3d 496, 506 (4th Cir. 2001).  Even in the event of such a misappropriation, there would be remedies short of a declaration that the loan was unconstitutional.  Va. Code Ann. § 36-55.31(9) (2005).

Plaintiff also claims that excessive entanglement will occur because the County will need to undertake "substantial monitoring" to assure that AHIF loan proceeds are not used for FBCC purposes.  However, any necessary monitoring will pertain to bricks and mortar, not the religious activities of FBCC.  The County, or VHDA, must do as much on any project involving both public and private funds.  See e.g., Va. Code Ann § 36-55.34:1 (2005).  This sort of neutral monitoring does not run afoul of the Establishment Clause.  See Agostini, 521 U.S. at 233-34; Tilton v. Richardson, 403 U.S. 672, 687 (1971).

Plaintiff also makes allegations about the physical structure of the building, claiming there will be entanglement

21

because the housing portion of the project will be on the same
site as the rebuilt church, the building lobby and entrance will
be shared with FBCC, the housing units will share a common
foundation, common bathrooms, a common elevator, and other common
infrastructure such as piping and walls with FBCC.  None of those
features pointed out by Plaintiff, however, constitute areas that
involve any religious activities of FBCC.  Furthermore, there is
no allegation that any of these features, including the
bathrooms, elevators, or lobby, will lead to any improper
proselytizing by FBCC.  The real issue is whether the residents,
in passing through neutral areas that might also have doors to
FBCC facilities, have a "real choice"  See Lee v. Weisman, 505
U.S. 577, 592, 595 (1992).  These residents do.  If passing by a
church is so bothersome, they need not live in the building.
Residents retain a choice to go into the church or to continue on
to their individual apartments.  The presence of a church in the
same building as the secular affordable housing units does not
make The Views ineligible for affordable housing funds.  Despite
the fact that Plaintiff alleges he lives less than one block from
the Property, he fails to allege any indoctrination from being in
such close proximity to FBCC's longstanding church on the
Property.

     A Plaintiff must allege specific facts in order to survive a
Motion to Dismiss and move forward.  For the reasons stated

above, it is the opinion of the Court that there is no excessive entanglement between Arlington County and FBCC alleged by Plaintiff.

Count II of Plaintiff's Amended Complaint claims that the County's affordable housing loan for the Property is a violation of Article I, Section 16 of the Constitution of Virginia.  The Supreme Court of Virginia has held this provision to be a "parallel provision" to the Establishment Clause.  <u>Virginia Coll. Bldg. Auth v. Lynn</u>, 260 Va. 608 (2000).  Count II has no more merit than Count I.

Count III of the Amended Complaint claims a civil conspiracy under 42 U.S.C. § 1983.  It is premised entirely on the notion of an Establishment Clause violation under Count I.  In addition, the Amended Complaint does not allege facts supporting a conclusion that any of the County Defendants intended a conspiracy to violate the Establishment Clause.

Count IV of the Amended Complaint alleges certain parties have been unjustly enriched through their conspiracy with the County.  To prevail on a theory of unjust enrichment, a plaintiff must establish, as a threshold matter, that he has conferred some benefit on the defendant.  <u>See</u> <u>Schmidt v. Household Fin. Corp.</u>, 276 Va. 108, 116 (2008).  Plaintiff has failed to allege that any party has been unjustly enriched at his monetary expense and therefore there is no basis for Plaintiff to claim that the

subject of the alleged unjust enrichment, the County's loan funds, should be returned to him.  For the foregoing reasons this Amended Complaint should be DISMISSED.  An appropriate order shall issue.


                                        _____/s/_____
                                          Claude M. Hilton
                                      United States District Judge

Alexandria, Virginia
April 12, 2010